IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

RONNIE TOWNER                                                                        PLAINTIFF

VS.                                                            CIVIL ACTION NO. 3:14cv1000-FKB

CAROLYN W. COLVIN, COMMISSIONER                                  DEFENDANT
OF SOCIAL SECURITY ADMINISTRATION

_____

AMENDED OPINION AND ORDER[1]

This is an action for judicial review of a final decision of the Commissioner of the Social Security Administration. Presently before the Court are Plaintiff's Motion for Summary Judgment [10] and Defendant's Motion for an Order Affirming the Commissioner's Decision [12]. Having considered the motions and supporting memoranda, the Court finds that Plaintiff's motion should be denied and the Commissioner's motion granted.

I. FACTS AND PROCEDURAL HISTORY

Plaintiff Towner, age 45 at the time of the decision, filed a Title II application for a period of disability and disability insurance benefits on June 1, 2011, alleging disability beginning May 24, 2011. [9] at 129.[2] Plaintiff alleges that he is unable to work due to late effects of cerebrovascular disease, heart problems, diabetes, and high blood pressure. *Id.* at 94, 155. Both his initial claim and his Request for Reconsideration were denied. *Id.* at 94-99, 107-110.

---

[1]The Opinion has been amended to reference the updated subsection of a regulation at issue, 20 C.F.R. § 404.1527(c)(2015). The previous Opinion entered on this date is hereby withdrawn.

[2]Citations reflect the original pagination of the administrative record.

The ALJ held a hearing on May 30, 2013, during which Towner was represented by counsel. *Id.* at 51. According to his hearing testimony, Towner finished the twelfth grade in remedial classes, but never obtained a G.E.D. *Id.* at 57. He testified that he last worked as a loader or forklift driver. *Id.* at 58. At the hearing, the vocational expert classified Towner's last work as a forklift operator as medium, semi-skilled work, carrying a specific vocational preparation level ("SVP") of 3. *Id.* at 84.

The ALJ issued an unfavorable decision on September 17, 2013. *Id.* at 12-26. The Appeals Council denied Towner's request for review of the ALJ's decision on November 4, 2014, and this appeal followed. *Id.* at 1.

In the ALJ's September 2013 decision, she worked through the familiar sequential evaluation process for determining disability.[3] The ALJ found that Towner had not engaged in

---

[3]In evaluating a disability claim, the ALJ is to engage in a five-step sequential process, making the following determinations:

(1)   whether the claimant is presently engaging in substantial gainful activity (if so, a finding of "not disabled" is made);

(2)   whether the claimant has a severe impairment (if not, a finding of "not disabled" is made);

(3)   whether the impairment is listed, or equivalent to an impairment listed, in 20 C.F.R. Part 404, Subpart P, Appendix 1 (if so, then the claimant is found to be disabled);

(4)   whether the impairment prevents the claimant from doing past relevant work (if not, the claimant is found to be not disabled); and

(5)   whether the impairment prevents the claimant from performing any other substantial gainful activity (if so, the claimant is found to be disabled).

See 20 C.F.R. §§ 404.1520, 416.920. The analysis ends at the point at which a finding of disability or non-disability is required. The burden to prove disability rests upon the claimant

substantial gainful activity since May 24, 2011, his alleged onset date. *Id.* at 14. The ALJ concluded that Towner has the severe impairments of "cerebrovascular accident (CVA) with residual right side weakness, coronary artery disease (CAD) status post percutaneous stenting, non-ischemic cardiomyopathy with systolic heart failure, right knee arthritis, right shoulder adhesive capsulitis, hypertension, diverticulosis, obesity, depression, and anxiety." *Id.* Nevertheless, the ALJ found that Towner did not have an impairment or combination of impairments of Listing severity. *Id.* at 16.

Turning to the residual functional capacity, the ALJ determined, after considering the record, that Towner has the "residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) with the following additional limitations: no climbing ladders, ropes, or scaffolds; occasional climbing ramps and/or stairs; occasional exposure to extreme temperature and pulmonary irritants; no exposure to height or hazards; occasional overhead reaching with the right upper extremity; and limited to simple, routine tasks." *Id.* at 19. The ALJ stated that the "claimant is found to be partially credible because he has some limitations but not to the extent alleged." *Id.* at 22. The ALJ considered medical opinions in the record in determining the RFC and gave "little weight" to the opinion of Towner's cardiologist, Dr. Thomas Skelton, because "it is not supported by more recent objective medical evidence and treatment notes indicating the claimant walks 1.5 hours per day for exercise." *Id.* at 24. The ALJ gave "little weight" to the opinion of Dr. Jan Boggs, the consultative psychological examiner, because she found "internal inconsistencies regarding the examiner's review of the record," but the ALJ gave "some weight

---

throughout the first four steps; if the claimant is successful in sustaining her burden through step four, the burden then shifts to the Commissioner at step five. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).

in evaluating the claimant's credibility as to disabling functional limitations" to Dr. Boggs's assessment that Towner displayed "'lack of investment' during the psychometric testing" due to "malingering." *Id.*

With these conditions in mind, the ALJ concluded that Towner is unable to perform any past work. *Id.* Considering Towner's residual functional capacity, and after consulting a vocational expert, the ALJ concluded that Towner would be able to perform the requirements of light and unskilled work, with a specific vocational preparation level of two, such as school bus monitor, ticket taker, and door greeter. *Id.* at 25. The ALJ also commented that the vocational expert's testimony is consistent with the information in the *Dictionary of Occupational Titles*. *Id.* Accordingly, the ALJ found that Towner was not disabled from February 14, 2011, the date of his application, through the date of the decision, September 17, 2013. *Id.* at 26.

## II.  MEDICAL HISTORY

The Court has determined that a detailed recitation of the medical records is not necessary because the parties summarized Towner's records in their briefs, and the ALJ provided a thorough summary of the records in her decision. Nevertheless, some of the medical records should be noted.

Plaintiff's treating cardiologist, Dr. Skelton, provided a form "Cardiac Residual Functional Capacity Questionnaire" outlining Towner's treatment history and the doctor's assessments of Towner's physical conditions, dated February 9, 2012. *Id.* at 451-456. Dr. Skelton stated that he had treated Towner for heart failure management every three months since June 9, 2011, and that his diagnosis was chronic systolic heart failure, stroke, coronary artery disease, and atrial fibrillation. *Id.* at 451. Because of these conditions, Dr. Skelton found that

Towner would exhibit the symptoms of fatigue and weakness. *Id.* He stated that Towner did not have anginal pain, was not a malingerer, has a marked limitation of physical activity, but that stress played a minimal role in the symptoms. *Id.* The doctor concluded that Towner would be capable of low stress jobs because he would need a slow pace and low stress due to incoordination and memory loss from the stroke. *Id.* at 452. The doctor noted that Towner's memory loss and lack of coordination lead to frustration and anxiety. *Id.* However, the doctor stated that emotional factors do not contribute to Towner's subjective symptoms and functional limitations, and that Towner's cardiac symptoms seldom are severe enough to interfere with attention and concentration. *Id.*

Dr. Skelton noted that Towner's medications could cause the side effects of "dizziness" and "light headedness," and that his prognosis was "fair." *Id.* at 453. With regard to a competitive work situation, the doctor stated that Towner could walk two city blocks without rest or severe pain, sit more than two hours at a time, stand thirty minutes at the time, and needed a job that permits shifting positions at will. *Id.* He stated that Towner will need to take unscheduled breaks every two hours, for fifteen minutes each time, during an eight hour day. *Id.* The doctor noted that the Plaintiff's legs should be elevated to heart level for ten percent of an eight hour day with prolonged sitting. *Id.* at 453-454.

In the medical form, Dr. Skelton stated that Towner could lift and carry less than ten pounds occasionally, ten pounds occasionally, twenty pounds rarely, and never fifty pounds. *Id.* at 454. The doctor stated that Towner could occasionally twist, stoop, and crouch, he should never climb ladders, and he should rarely climb stairs. *Id.* The doctor recommended that Towner avoid concentrated exposure to extreme cold, extreme heat, wetness, and fumes; he put

no restriction on Towner's exposure to humidity and noise; and he concluded that Towner should avoid all exposure to hazards such as machinery and heights. *Id.* at 455. The doctor concluded that Towner's impairments would produce good days and bad days, and that he would likely be absent from work about once a month as a result of impairments or treatment. *Id.* He advised that an assessment from "Neurology" was "needed due to stroke." *Id.* As to other limitations, he noted that Towner "cannot lift or carry with right hand or arm, decreased strength to right leg as well." *Id.* at 456.

There are notes of other, more recent doctor visits in the record. On December 21, 2012, Dr. Syed Baqer Sadiq examined Towner in the neurology clinic of UMMC. *Id.* 688-691. Dr. Sadiq noted that Towner complained of numbness and tightness on his right side since his June 2011 stroke, but he was able to move all of his extremities. *Id.* at 688, 691. Towner was able to perform multi-step commands, he had good memory recall in one and five minutes, and his speech was normal with good comprehension, repetitions, and naming. *Id.* at 691. Dr. Sadiq observed that Towner had five out of five strength in all four extremities, with normal bulk and tone, although he had decreased sensation on the right side of his body and was hyporeflexic throughout. *Id.* Dr. Sadiq recommended continuation of active range of movement exercises and a return visit in six months. *Id.*

Towner sought regular follow-up treatment in the cardiology clinic of UMMC in September, November, and December 2012, and March 2013. *Id.* at 679-687; 692-694. Dr. Kimberly Miller examined Towner in September, December and March. Dr. Carlos Eduardo Drago examined Towner in November, with Dr. Skelton acting as the attending physician. In November, Dr. Drago found that Towner's heart had "[r]egular rate and thythm, S1 and S2

normal, no murmur, rub or gallop." *Id.* at 683.  Throughout the visits, Towner reported that he was exercising, and by March 2013, Towner informed Dr. Miller that he was walking one and one-half hours daily.  *Id.* at 692.  Although Towner had gained fifteen pounds by March 2013, he admitted that he was non-compliant some of the time with the recommended low sodium diet and compliant most of the time with the recommended fluid restrictions in December 2012 and March 2013. *Id.* at 685, 692.  In March 2013, Dr. Miller reported that Towner had full range of movement of all extremities.  *Id.* at 693.  At the same appointment, Dr. Miller observed that Towner's heart rhythm was irregular, but he had no murmurs.  *Id.*  She also observed that his blood pressure and heart rate were "well controlled."  *Id.* at 694.  In March 2013, Dr. Miller also commented that Towner has "chronic ischemic dilated cardiomyopathy with mildly reduced LV systolic function," but also observed that Towner had not been hospitalized since his last appointment in December 2012.  *Id.* at 692.

Doctors ordered echocardiograms in October and November 2012.  *Id.* at 680, 694.  In October 2012, the testing revealed "no left ventricular hypertrophy.  The left ventricular size is normal.  The overall left ventricular systolic function is normal.  Estimated LV ejection fraction is 60%.  There are no segmental wall motion abnormalities."  *Id.* at 680.  In November 2012, the echocardiogram found "[b]orderline normal LV function," with an effusion rate of 45-50%.  *Id.* at 694.  The testing also found "[m]oderately enlarged right atrium and moderately enlarged left atrium. Mild mitral and moderate tricuspid regurgitation. Compared to previous study the LV EF is now borderline norma [sic] (from 60% on last study and tricuspid regurgitation is now moderate[)]."  *Id.*

The Court also notes that Jan Boggs, Ph.D., performed a consultative psychological

examination on July 2, 2013. *Id.* at 760. In his report, he stated that he had received no records in the referral. *Id.* Dr. Boggs commented that Towner "did not make sufficient effort on the psychometrics for valid outcomes" and concluded that the I.Q. test's "weak result appears to have been due to malingering." *Id.* at 760, 762. However, at the end of the report, Dr. Boggs commented that as he "finished the report, [he] saw the claimant's Weems Mental Health record with the last note dated 4/3/13. [Towner's] Axis 1 diagnosis as Major Depression, single episode, moderate, Anxiety Disorder, and Mood Disorder due to medical condition." *Id.* at 762. The Court observes that despite having the Weems records at his disposal, Dr. Boggs chose not to revise his report.

### III. STANDARD OF REVIEW

This Court's review is limited to an inquiry into whether there is substantial evidence to support the Commissioner's findings, *Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971), and whether the correct legal standards were applied. 42 U.S.C. § 405(g) (2006); *accord Falco v. Shalala*, 27 F.3d 160, 163 (5th Cir. 1994); *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). The Fifth Circuit has defined the "substantial evidence" standard as follows:

> Substantial evidence means more than a scintilla, less than a preponderance, and is: "such relevant evidence as a reasonable mind might accept to support a conclusion. It must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'"

*Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988)(quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)). In applying the substantial evidence standard, the Court must carefully examine the entire record, but must refrain from re-weighing the evidence or substituting its judgment for that of the Commissioner. *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995).

Conflicts in the evidence and credibility assessments are for the Commissioner and not for the courts to resolve. *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995). Hence, if the Commissioner's decision is supported by the evidence, and the proper legal standards were applied, the decision is conclusive and must be upheld by this Court. *Paul v. Shalala*, 29 F.3d 208, 210 (5th Cir. 1994), *overruled on other grounds, Sims v. Apfel,* 530 U.S. 103 (2000).

Finally, pursuant to 42 U.S.C. § 405(b)(1), an ALJ is "required to discuss the evidence offered in support of [the claimant's] claim for disability and to explain why she found [the claimant] not to be disabled" at a particular step. *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007). The ALJ is "not always required to do an exhaustive point-by-point discussion." *Id*. But when the ALJ offers nothing to support her conclusion, "a reviewing court[] simply cannot tell whether her decision is based on substantial evidence or not." *Id*. (citing *Cook v. Heckler*, 783 F.2d 1168, 1172 (4th Cir. 1986)). "A reviewing court may not, however, examine only the evidence favorable to the Commissioner; it must also examine contrary evidence." *Higginbotham v. Barnhart*, 405 F.3d 332, 335 (5th Cir. 2005).

## IV. DISCUSSION OF THE ALLEGED ERRORS AND APPLICABLE LAW

Plaintiff raises the following issues for consideration:

1. Did the ALJ give proper consideration to medical opinion evidence in determining Plaintiff's residual functional capacity?

2. Having found that the Plaintiff cannot return to his past relevant work, did the Commissioner carry her burden at step 5 of the sequential evaluation of disability by establishing the existence of other work, in significant numbers, which the Plaintiff can perform?

Plaintiff argues that the answer to both of the foregoing questions is "no." The Court now turns to these alleged errors.

### A. Did the ALJ fail to give due consideration to medical opinion evidence?

Plaintiff argues that the ALJ failed to give proper consideration to the medical opinion evidence of Dr. Skelton, his treating cardiologist. Towner also asserts that the ALJ failed to give due consideration to the opinions of Towner's treating mental health professionals at Weems Community Mental Health Center, yet the ALJ gave too much weight to the opinion of Dr. Boggs, the consultative examiner.

The Fifth Circuit has held that "ordinarily the opinions, diagnoses, and medical evidence of a treating physician who is familiar with the claimant's injuries, treatments, and responses should be accorded considerable weight in determining disability." *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985). However, the treating physician's opinions are far from conclusive because the ALJ has the sole responsibility for determining disability status. *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994). "Accordingly, when good cause is shown, less weight, little weight, or even no weight may be given to the physician's testimony. The good cause exceptions [the court] has recognized include disregarding statements that are brief and conclusory, not supported by medically acceptable clinical laboratory diagnostic techniques, or otherwise unsupported by the evidence." *Id.* In other words, the ALJ "'is entitled to determine the credibility of medical experts as well as lay witnesses and weigh their opinions accordingly.'" *Id.* (quoting *Scott v. Heckler*, 770 F.2d at 485). Moreover, "the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion. The treating physician's opinions are not conclusive." *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000)(internal citations and quotations omitted).

### 1. Dr. Skelton

In this case, the ALJ attributed "little weight" to Dr. Skelton's opinion because his cardiac questionnaire "is not supported by more recent objective medical evidence and treatment notes indicating the claimant walks 1.5 hours per day for exercise." [9] at 24.  Plaintiff claims the ALJ erred by not further addressing the factors in 20 C.F.R. § 404.1527, when affording Dr. Skelton's opinion "little weight."

As stated above, "the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion. The treating physician's opinions are not conclusive." *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000)(internal citations and quotations omitted). Furthermore, when the competing evidence comes from other treating physicians, the ALJ does not err by not addressing all of the factors outlined in 20 C.F.R § 404.1527.  *Qualls v. Astrue*, 339 Fed. App'x. 461, 466 (5th Cir. 2009)(citing *Newton*, 209 F.3d at 453).

While the ALJ in this case did not go through each factor outlined in 20 C.F.R. § 404.1527(c), there is evidence in the record from other treating physicians that supports the ALJ's decision.  Treatment notes from several examinations by Dr. Miller indicate that Plaintiff's exercise regimen had steadily increased since Dr. Skelton's February 2012 opinion.  Dr. Miller's progress notes indicate that Towner was walking one hour per day in September 2012 and that he had increased his walking to one and one-half hours per day by March 2013. [9] at 679, 692. Although an echocardiogram found that his left ventricle effusion rate had decreased from 60% in October 2012, to between 45% and 50% in November 2012, Dr. Miller still characterized it as "borderline normal." *Id.* at 694.  By March 2013, Dr. Miller commented that Towner's blood pressure and heart rate were well controlled, *id.*, and that he had full range of motion in all extremities.  *Id.* at 693.  In December 2012, Towner's neurologist, Dr. Sadiq, reported that

Towner had five out of five strength in all four extremities, with normal bulk and tone. *Id.* at 691. The neurologist noted that Towner had good memory, normal speech, and the ability to perform multi-step commands. *Id.* The doctor also recommended that Towner engage in active range of motion exercises. *Id.* The extent of Towner's exercise regimen, as described by Dr. Miller, and his strength and range of motion assessments, as reported by both Dr. Miller and Dr. Sadiq, provide medical evidence that runs counter to the functional limitations and other restrictions given by Dr. Skelton in his February 2012 assessment.

"[T]he ALJ has the sole responsibility for determining the claimant's disability status." *Moore v. Sullivan*, 919 F.2d 901, 905 (5th Cir. 1990). "The Secretary, not the courts, has the duty to weigh the evidence, resolve material conflicts in the evidence, and decide the case." *Chaparro v. Bowen*, 815 F.2d 1008, 1010 -1011 (5th Cir. 1987)(citing *Carry v. Heckler,* 750 F.2d 479, 482 (5th Cir. 1985)). Because the record shows that there is other, more recent medical evidence in the record such "that a reasonable mind might accept to support the [ALJ's] conclusion," *see Abshire*, 848 F.2d at 640, and because Dr. Skelton's opinions were not consistent with or supported by the findings and opinions of other treating and/or examining physicians, the Court finds that the ALJ did not err in giving Dr. Skelton's opinion "little weight." The Court finds that the ALJ's decision on this issue is supported by substantial evidence.

### 2.  Weems

Plaintiff next asserts that the ALJ failed to give proper consideration to the global assessment functioning ("GAF") scores found by mental health professionals at Weems Community Mental Health Center ("Weems"). According to Plaintiff, his most recent score was

a 50, which still indicates severe impairment. A treatment record from Weems shows that his GAF score was 50 in April 2013. [9] at 530-531.

"However, while potentially relevant, the GAF scale does not have a direct correlation to the severity requirements in the Listings." *Hill v. Astrue*, 2009 WL 2901530, *7 (S.D. Tex. Sept. 1, 2009). Likewise, in this case, there is other evidence in the record supporting the ALJ's decision that Towner's mental status, as represented by the GAF score, was not disabling. The ALJ noted that the treatment notes from Weems indicated that Towner's "depressive symptoms were stable with his treatment regiment, without any positive signs of psychosis or major affective disruption as of July 2012." [9] at 22. The ALJ observed that although he was admitted for inpatient treatment for depression in August 2012, the medical record noted that he was discharged in a "markedly improved state" and in "stable condition." *Id.* at 21, 674. Physical therapists reported that although he experienced pain with therapy, he was motivated and could tell that he "needed" the exercises. *Id.* at 718. Throughout the record, he reported that he continued to engage in some leisure and social activities, such as fishing with his grandchildren and church. *Id.* at 66, 720, 761. Because "[c]onflicts in the evidence are for the [Commissioner] and not the courts to resolve," *Newton v. Apfel,* 209 F.3d 448, 452 (5th Cir. 2000), this issue does not provide a basis for reversal or remand.

### 3. Dr. Boggs

In addition, Towner attacks the weight given by the ALJ to the opinion of Dr. Boggs. The ALJ concluded that she should give Dr. Boggs's opinion "little weight," because Dr. Boggs conducted the consultative examination without reviewing Towner's school and medical records. Nevertheless, the ALJ gave "some weight in evaluating claimant's credibility as to disabling

functional limitations" to Dr. Boggs's conclusion that Towner displayed a "'lack of investment' . . . due to malingering." [9] at 24. Plaintiff argues that the ALJ erred by giving some weight to Dr. Boggs's opinion that Plaintiff showed "lack of investment" and "malingering," when the ALJ gave "little weight" to the opinion in general.

Turning to the evaluation of Dr. Boggs, he commented that he did not have access to Towner's school and medical records before he conducted the exam. *Id.* at 760. However, he stated that as he "finished this report, [he] saw the claimant's Weems Mental Health record, with the last note dated 4/3/13." *Id.* at 762. The records of Weems consisted of treatment records from February 2012 to April 2013. *Id.* at 530-559. The intake/assessment records detailed Towner's medical conditions, as well as his schooling, which included information that he had finished the twelfth grade in special education, without attaining a GED, college degree, or vocational training. *Id.* at 553. A psychiatric evaluation at Weems described Towner's intelligence as "below average." *Id.* at 550. Thus, even after Dr. Boggs saw Towner's educational and medical history, he did not change his opinion as to Plaintiff's lack of "sufficient effort on the psychometrics for valid outcomes" and "malingering." *Id.* at 760, 762. Because the "'task of weighing the evidence is the province of the ALJ,'" she can consider whether "malingering and poor motivation clouded the results of psychological examinations." *Broadnax v. Barnhart*, 54 F. Appx's. 406, 2002 WL 31688935 at *1 (5th Cir. 2002) (quoting *Chambliss v. Massanari*, 269 F.3d 520, 523 (5th Cir. 2001)). Accordingly, this issue does not provide the basis for reversal or remand.

### B. Did the Commissioner fail to establish the existence of jobs that Plaintiff can perform?

After arriving at an RFC that concluded that Towner could perform "simple, routine

tasks," the ALJ determined that Towner could perform the requirements of light and unskilled work, as found in the jobs of school bus monitor, ticket taker, and door greeter. Plaintiff argues that the jobs relied upon by the ALJ are inconsistent with the ALJ's limitations for Towner, therefore she failed to carry her burden of establishing work that Towner can perform. Plaintiff more specifically argues that the ALJ solicited testimony from the vocational expert that was inconsistent with the *Dictionary of Occupational Titles*. Plaintiff asserts it was error for the ALJ to find that Towner was limited to "simple, routine tasks" as a result of his impairments, but to also conclude that Towner could perform jobs at reasoning level 2 (school bus monitor and ticket taker) and reasoning level 3 (door greeter).

      The Court has addressed this issue before and concluded that a claimant, who is limited to "simple, routine tasks," can also perform jobs at reasoning level 2, therefore there is no apparent "conflict" between the DOT and the vocational expert's testimony. *See Ealy v. Colvin*, 2014 WL 3928193, *3 (S. D. Miss. Aug. 12, 2014)(Lee. J.)(collecting cases). As stated in *Ealy,*

> "there is no direct or apparent conflict between an RFC limiting a plaintiff to 'simple' instructions and a VE's testimony that a plaintiff may perform work at a reasoning level of two. The weight of the authority supports a determination that a limitation to 'simple, repetitive, and routine tasks' could support work with a reasoning level of two or three."

*Id.* (quoting *Smith v. Colvin*, 2014 WL 1407437 (N.D. Tex. Mar. 24, 2014)). Moreover, the Fifth Circuit "has recognized that the DOT is not comprehensive, in that it cannot and does not purport to include each and every specific skill or qualification for a particular job." *Carey v. Apfel*, 230 F.3d 131, 145 (5th Cir. 2000) Accordingly, because the ALJ found work that Plaintiff is capable of performing, considering his limitations as recognized by the ALJ, there is no basis to disturb the ALJ's conclusion on this issue.

## V. CONCLUSION

      In sum, the undersigned finds that the ALJ correctly analyzed the applicable law, that

-15-

substantial evidence supports her decision, and that no reversible error exists. Accordingly, the undersigned finds that the Motion for an Order Affirming the Commissioner's Decision [12] should be granted, and the Motion for Summary Judgment filed by Plaintiff [10] should be denied. A separate judgment will be entered. Fed. R. Civ. P. 58.

SO ORDERED, this the 31st day of March, 2016.

/s/ F. Keith Ball
UNITED STATES MAGISTRATE JUDGE